# EXHIBIT 1



**CT Corporation**
**Service of Process Notification**
01/31/2024
CT Log Number 545653971

## Service of Process Transmittal Summary

**TO:**     Martin Dekker, Vice President, Tax
JENNMAR CORP./FRANK CALANDRA
258 Kappa Dr
Pittsburgh, PA 15238-2818

**RE:**     **Process Served in Pennsylvania**

**FOR:**     Compliance Staffing Agency, LLC  (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: ALEX MAXFIELD, individually and on behalf of others similarly situated // To: Compliance Staffing Agency, LLC |
| **CASE #:** | GD24000849 |
| **NATURE OF ACTION:** | Employee Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Harrisburg, PA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 01/31/2024 at 13:03 |
| **JURISDICTION SERVED:** | Pennsylvania |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  JAMES PFEIFER  jpfeifer@jennmar.com |
| | Email Notification,  Martin Dekker  mdekker@jennmar.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 600 N. 2nd Street, Suite 401 |
| | Harrisburg, PA 17101 |
| | 866-539-8692 |
| | CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                          Wed, Jan 31, 2024
**Server Name:**                   Drop Service

| Entity Served | COMPLIANCE STAFFING AGENCY, LLC |
|---|---|
| Case Number | GD-24-000849 |
| Jurisdiction | PA |

| Inserts | | |
|---|---|---|
| | | |



NOTICE OF SUIT TO SHERIFF OF ALLEGHENY CO.

You are hereby notified that on 01/22/2024

a COMPLAINT has been filed in this case

and you are required to serve the same on or before the

02/21/2024

Michael McGeever, Director

Department of Court Records

## COMPLAINT IN CIVIL ACTION

### IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

Plaintiff(s)

   **Maxfield, Alex**

Case Number:
**GD-24-000849**

Type of pleading:
**Complaint**

Filed on behalf of:
**Maxfield Alex**

Geist P. Joshua

(Name of filing party)

VS

Defendant(s)

   **Compliance Staffing Agency LLC,**
       **dba Jennmar Services**

[X]  Counsel of Record

[ ]  Individual, If Pro Se

Name, Address and Telephone Number:
**Geist P. Joshua**

**412 2811455**

Attorney's State ID: 85745

**Michael McGeever, Director, Department of Court Records**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

ALEX MAXFIELD, individually and on
behalf of others similarly situated,

CIVIL DIVISION – CLASS ACTION

417 North Mill Street
Carrier Mills, IL 62917

Case No.:

           Plaintiff,

vs.

Pleading Type:

COMPLIANCE STAFFING AGENCY, LLC
d/b/a JENNMAR SERVICES,

**CLASS ACTION COMPLAINT**

258 Kappa Drive
Pittsburgh, PA 15238

           Defendant.

Filed on behalf of the Plaintiff:
*Alex Maxfield*

Counsel of Record for this Party:

Joshua P. Geist, Esquire
PA ID No. 85745
William F. Goodrich, Esquire
PA ID No. 30235
GOODRICH & GEIST PC
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

Michael A. Josephson, Esquire
PA ID No. 308410
Andrew W. Dunlap, Esquire*
TX Bar No. 24078444
William M. Hogg, Equire*
TX Bar No. 24087733; Cal. Bar No. 338196
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: 713-352-1100

Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch, Esquire*
TX Bar No. 24001807
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**JURY TRIAL DEMANDED**          *\*Pro hac vice applications forthcoming*

2

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

ALEX MAXFIELD, individually and on
behalf of others similarly situated,

CIVIL DIVISION – CLASS ACTION

417 North Mill Street
Carrier Mills, IL 62917

Case No.:

        Plaintiff,

   vs.

COMPLIANCE STAFFING AGENCY, LLC
d/b/a JENNMAR SERVICES,

258 Kappa Drive
Pittsburgh, PA 15238

       Defendant.

**JURY TRIAL DEMANDED**

---

## NOTICE TO DEFEND

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER **(OR CANNOT AFFORD ONE)**, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW **(TO FIND OUT WHERE YOU CAN GET LEGAL HELP). THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**Lawyer Referral Service
Allegheny County Bar Association
11th Floor Koppers Building
436 Seventh Avenue**

3

Pittsburgh, PA 15219
(412) 261-5555

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

ALEX MAXFIELD, individually and on
behalf of others similarly situated,

417 North Mill Street
Carrier Mills, IL 62917

       Plaintiff,

vs.

COMPLIANCE STAFFING AGENCY, LLC
d/b/a JENNMAR SERVICES,

258 Kappa Drive
Pittsburgh, PA 15238

       Defendant.

CIVIL DIVISION – CLASS ACTION

Case No.:

**JURY TRIAL DEMANDED**

## ORIGINAL CLASS ACTION COMPLAINT

    Alex Maxfield ("Maxfield"), by and through his undersigned counsel, hereby avers as follows:

### SUMMARY

    1.    Maxfield brings this class action to recover unpaid wages and other damages from Compliance Staffing Agency, LLC d/b/a Jennmar Services ("Jennmar") for violations of the Illinois Minimum Wage Law ("IMWL") and the Illinois Wage Payment and Collection Act ("IWPCA").

    2.    Jennmar employed Maxfield as one of its Hourly Illinois Workers (defined below) in Macedonia, Illinois.

    3.    Jennmar pays Maxfield and its other Hourly Illinois Workers on an hourly basis.

5

4.      Maxfield and the other Hourly Illinois Workers regularly work more than 40 hours a week.

5.      But Jennmar does not pay Maxfield and its other Hourly Illinois Workers for all their hours worked.

6.      Instead, Jennmar only pays Maxfield and its other Hourly Illinois Workers for the number of hours Jennmar bills its clients for their work (based on the clients' pre-determined work schedules), regardless of the number of hours these employees actually work (or Jennmar's "billable pay scheme").

7.      But Maxfield and the other Hourly Illinois Workers regularly work beyond these pre-determined work schedules and are forced to work before and/or after their scheduled shifts "off the clock" to complete their job duties and responsibilities in accordance with Jennmar's (and its clients') policies, procedures, and expectations.

8.      But Jennmar does not pay Maxfield and the other Hourly Illinois Workers for their pre- and post-shift "off the clock" work.

9.      Jennmar's uniform billable pay scheme violates the IMWL by depriving Maxfield and the other Hourly Illinois Workers of overtime wages for all overtime hours worked.

10.     Likewise, Jennmar's uniform billable pay scheme violates the IWPCA by depriving Maxfield and the other Hourly Illinois Workers of all their earned wages (at their agreed hourly rates) for all hours worked.

### JURISDICTION & VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 42 Pa.C.S.A. 931(a).

12.     This Court has personal jurisdiction because Jennmar is a domestic limited liability company headquartered in Pittsburgh and registered to do business in the Commonwealth.

13.     Venue is properly laid in Allegheny County pursuant to Pa. R. C. P. 2179.

14.     Specifically, Jennmar is headquartered in Pittsburgh, Pennsylvania, which is in Allegheny County. Pa. R. C. P. 2179(a)(1).

15.     Finally, this matter is properly in this Court because: (1) the aggregate amount in controversy is under $5 million; (2) the size of Maxfield's proposed class is fewer than 100 individual members; (3) Maxfield's and the other Hourly Illinois Workers' claims arise solely under state law, rather than any federal statute; and (4) there is no embedded federal question or issue in Maxfield's and the other Hourly Illinois Workers' claims arising solely under state law.

## PARTIES

16.     Maxfield is an adult individual who is a citizen of Illinois.

17.     Maxfield worked for Jennmar as a General Laborer assigned to provide services to Jennmar's client, Viking Mining, in Macedonia, Illinois from approximately March 2023 through April 2023.

18.     Throughout his employment, Jennmar classified Maxfield as non-exempt and paid him on an hourly basis.

19.     Throughout his employment, Jennmar subjected Maxfield to its uniform, illegal billable pay scheme.

20.     Maxfield brings this class action on behalf of himself and other similarly situated hourly, non-exempt Jennmar employees in Illinois who were subject to Jennmar's illegal billable pay scheme.

7

21. Jennmar uniformly prohibits each of these employees from recording their hours worked beyond the number of hours Jennmar bills its clients for the same.

22. But each of these employees are regularly forced to work "off the clock" beyond the number of hours Jennmar bills its clients for their work.

23. Thus, Jennmar uniformly deprives these employees of overtime wages for all overtime hours worked in violation of the IMWL.

24. Likewise, Jennmar uniformly deprives these employees of earned wages (at their agreed hourly rates) for all hours worked in violation of the IWPCA.

25. The putative class of similarly situated employees under the IMWL is defined as:

> **All hourly Jennmar employees in Illinois who were subject to Jennmar's billable pay scheme at any time during the 3 years prior to the filing of Maxfield's Original Complaint until final resolution of this Action (the "IMWL Class Members").**

26. The putative class of similarly situated employees under the IWPCA is defined as:

> **All hourly Jennmar employees in Illinois who were subject to Jennmar's billable pay scheme at any time during the 10 years prior to the filing of Maxfield's Original Complaint until final resolution of this Action (the "IWPCA Class Members").**

27. The IMWL Class Members and the IWPCA Class Members are collectively referred to as the "Hourly Illinois Workers."

28. Jennmar is a Pennsylvania limited liability company headquartered in Pittsburgh, Pennsylvania.

29. Jennmar is registered to do business in the Commonwealth.

30. Jennmar may be served through its registered agent: **CT Corporation System, 600 North 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101.**

**FACTS**

8

31.    Jennmar is an employment and staffing agency that "serves the industrial, coal, oil & gas, medical, administrative, and distribution industries" across the United States, including in Illinois.[1]

32.    To meet its business objectives, Jennmar hires workers, like Maxfield and the other Hourly Illinois Workers, who it "staffs" to its clients in Illinois.

33.    Jennmar uniformly classifies these employees (including Maxfield and its other Hourly Illinois Workers) as non-exempt and pays them on an hourly basis.

34.    While exact job titles and precise job duties may differ, Maxfield and the other Hourly Illinois Workers are all subject to Jennmar's same or similar illegal policy—Jennmar's illegal billable pay scheme—for similar work.

35.    For example, Maxfield worked for Jennmar as a General Laborer assigned to provide services to Jennmar's client, Viking Mining, in Macedonia, Illinois from approximately March 2023 through April 2023.

36.    As a General Laborer, Maxfield's job consisted of working in Jennmar's client's (Viking Mining) underground coal mine, such as picking up and hauling off trash and performing other general mining services.

37.    Throughout his employment, Jennmar classified Maxfield as non-exempt and paid him on an hourly basis.

38.    Indeed, Jennmar agreed to pay Maxfield approximately $21 an hour for his first 40 hours worked plus overtime for his hours worked over 40 in a workweek.

39.    Throughout his employment, Jennmar required Maxfield to submit his hours worked to Jennmar for approval via weekly timesheets.

---

[1] https://www.jennmarservices.com/industries (last visited January 19, 2024).

9

40.     Throughout his employment, Maxfield typically 10 to 16 hours a day for 6 days a workweek (or 60 to 96 hours a workweek).

41.     But throughout his employment, Jennmar did not pay Maxfield for all his hours worked.

42.     Instead, throughout his employment, Jennmar subjected Maxfield to its uniform, illegal billable pay scheme.

43.     Specifically, Jennmar prohibited Maxfield from recording any hours he worked beyond the number of hours Jennmar would bill its clients for the same (typically limited to 10 to 12 hours a day), regardless of whether he worked more.

44.     For example, throughout his employment, Maxfield was required to arrive at the assigned jobsite an hour before his scheduled shift start time, dress out in his mining gear, and prepare to go down into the mine "off the clock."

45.     But because Jennmar did not bill its client (Viking Mining) for this mandatory pre-shift "off the clock" work, Jennmar refused to pay Maxfield for the same.

46.     Thus, as a result of its illegal billable pay scheme, Jennmar failed to pay Maxfield overtime wages for all his overtime hours worked in violation of the IMWL.

47.     Likewise, as a result of its illegal billable pay scheme, Jennmar failed to pay Maxfield earned wages (at his agreed hourly rate) for all his hours worked in violation of the IWPCA.

48.     Maxfield and the other Hourly Illinois Workers perform their jobs under Jennmar's supervision and use materials, equipment, and technology Jennmar approves and supplies.

49.    Jennmar requires Maxfield and its other Hourly Illinois Workers to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

50.    At the end of each pay period, Maxfield and the other Hourly Illinois Workers receive wages from Jennmar that are determined by common systems and methods that Jennmar selects and controls.

51.    Jennmar requires Maxfield and its other Hourly Illinois Workers to submit their hours worked to Jennmar for approval via weekly timesheets.

52.    But, just as with Maxfield, Jennmar fails to pay its other Hourly Illinois Workers for all their hours worked.

53.    Indeed, Jennmar uniformly subjects its other Hourly Illinois Workers to the same illegal billable pay scheme it imposed on Maxfield.

54.    Specifically, just as with Maxfield, Jennmar prohibits the other Hourly Illinois Workers from recording any hours they work beyond the number of hours Jennmar would bill its clients for the same, regardless of whether they worked more.

55.    But, like Maxfield, the other Hourly Illinois Workers were regularly forced to perform compensable work "off the clock" before and/or after their scheduled shifts for Jennmar's predominant benefit.

56.    And, just as with Maxfield, Jennmar does not pay its other Hourly Illinois Workers for any work they perform "off the clock" beyond the number of hours Jennmar is permitted to bill its clients for the same (based on pre-determined schedules).

11

57.    In fact, if Maxfield and the other Hourly Illinois Workers recorded they worked beyond the number of hours Jennmar billed its clients for the same, Jennmar would not approve their timesheets.

58.    Jennmar fails to exercise its duty as Maxfield's and the other Hourly Illinois Workers' employer to ensure these employees are not performing work "off the clock" that Jennmar does not want performed.

59.    And Jennmar knows, should know, or recklessly disregards whether Maxfield and its other Hourly Illinois Workers routinely perform work "off the clock" before and after their scheduled shifts.

60.    Indeed, Maxfield and other Hourly Illinois Workers complained to their supervisors, HR, and/or Jennmar management about being forced to work "off the clock" before and after their scheduled shifts without pay.

61.    Thus, Jennmar requested, suffered, permitted, or allowed Maxfield and its other Hourly Illinois Workers to work "off the clock" before and after their scheduled shifts.

62.    Despite accepting the benefits, Jennmar does not pay Maxfield and its other Hourly Illinois Workers for the compensable work they perform "off the clock" before and after their scheduled shifts.

63.    Thus, under Jennmar's uniform, illegal billable pay scheme, Maxfield and the other Hourly Illinois Workers are denied overtime pay for the compensable work they perform "off the clock" before and after their scheduled shifts during workweeks in which they work more than 40 hours in violation of the IMWL.

64.    Likewise, under Jennmar's uniform, illegal billable pay scheme, Jennmar illegally withholds earned wages from Maxfield and the other Hourly Illinois Workers (at their agreed

12

hourly rates) for the work they perform "off the clock" before and after their scheduled shifts in violation of the IWPCA.

**CLASS ACTION ALLEGATIONS**

65.     Maxfield incorporates all other paragraphs by reference.

66.     Maxfield brings his claims as a class action on behalf of himself and the other Hourly Illinois Workers pursuant to Rule 1700, *et seq.*

67.     Like Maxfield, the other Hourly Illinois Workers are victimized by Jennmar's illegal billable pay scheme.

68.     Other Hourly Illinois Workers worked with Maxfield and indicated they were paid in the same manner, performed similar work, and were subject to Jennmar's same illegal billable pay scheme.

69.     Based on his experience, Maxfield is aware Jennmar's illegal billable pay scheme was imposed on the other Hourly Illinois Workers.

70.     Upon information and belief, the putative class of Hourly Illinois Workers includes more than 50 members.

71.     Thus, the putative class of Hourly Illinois Workers is so numerous that the joining of all class members in one lawsuit is not practical.

72.     While the exact number of Hourly Illinois Workers is unknown to Maxfield at this time, they can be readily and easily identified through Jennmar's business and personnel records.

73.     The Hourly Illinois Workers are similarly situated in the most relevant respects.

74.     Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages for all hours worked and overtime wages for all hours worked over 40 in a workweek.

75.    The only relevant inquiry is whether the Hourly Illinois Workers were subject Jennmar's illegal billable pay scheme (which, by definition, they were).

76.    Therefore, the specific job titles or precise job locations of the various Hourly Illinois Workers do not prevent class treatment.

77.    Rather, Jennmar's uniform illegal billable pay scheme renders Maxfield and the other Hourly Illinois Workers similarly situated for the purposes of determining their right to earned wages and overtime pay.

78.    Jennmar's records reflect the number of hours the Hourly Illinois Workers worked each week.

79.    Jennmar's records further reflect it capped the Hourly Illinois Workers' work time recorded on their timesheets based on the number of hours Jennmar billed its clients for the same.

80.    The back wages owed to Maxfield and the other Hourly Illinois Workers can therefore be calculated using the same formula applied to the same records.

81.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Jennmar's records, and there is no detraction from the common nucleus of liability facts.

82.    Therefore, the issue of damages does not preclude class treatment.

83.    Maxfield's experiences are therefore typical of the experiences of the other Hourly Illinois Workers.

84.    Maxfield has no interest contrary to, or in conflict with, the other Hourly Illinois Workers that would prevent class treatment.

85.    Like each Hourly Illinois Worker, Maxfield has an interest in obtaining the unpaid wages owed under Illinois law.

14

86.     Maxfield and his counsel will fairly and adequately protect the interests of the other Hourly Illinois Workers.

87.     Maxfield retained counsel with significant experience in litigating complex class actions.

88.     A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.

89.     Absent this class action, many Hourly Illinois Workers will not obtain redress for their injuries, and Jennmar will reap the unjust benefits of violating the IMWL and IWPCA.

90.     Further, even if some of the Hourly Illinois Workers could afford individual litigation, it would be unduly burdensome to the judicial system.

91.     Indeed, the multiplicity of actions would create a hardship to the Hourly Illinois Workers, the Court, and Jennmar.

92.     Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Illinois Workers' claims.

93.     Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Hourly Illinois Workers are entitled.

94.     The questions of law and fact that are common to each Hourly Illinois Worker predominate over any questions affecting solely the individual members.

95.     Among the common questions of law and fact are:

     (a)     Whether Jennmar engaged in a policy and practice of prohibiting the Hourly Illinois Workers to record hours worked beyond their scheduled shifts;

(b)      Whether Jennmar knew, or had reason to know, it requested, suffered, permitted, or allowed the Hourly Illinois Workers to work "off the clock" beyond their scheduled shifts;

(c)      Whether Jennmar failed to pay the Hourly Illinois Workers overtime wages for all overtime hours worked in violation of the IMWL; and

(d)      Whether Jennmar failed to pay the Hourly Illinois Workers all their earned wages (at their agreed hourly rates) for all hours worked in violation of the IWPCA.

96.     Maxfield knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

97.     As part of its regular business practices, Jennmar intentionally, willfully, and repeatedly violated the IMWL and IWPCA with respect to Maxfield and the other Hourly Illinois Workers.

**COUNT I**

**FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL
PURSUANT TO 820 ILCS 105/1, *ET SEQ.*
(IMWL CLASS)**

98.     Maxfield incorporates all other paragraphs by reference.

99.     Maxfield brings his IMWL claims as a class action on behalf of himself and the other IMWL Class Members pursuant to Rule 1700, *et seq.*

100.     Jennmar's conduct violates the IMWL (820 ILCS 105/1, *et seq.*).

101.     At all relevant times, Jennmar was subject to the IMWL because Jennmar was (and is) an "employer" within the meaning of the IMWL. 820 ILCS 105/3(c).

16

102.    At all relevant times, Jennmar employed Maxfield and the other IMWL Class Members as its covered "employees" within the meaning of the IMWL. 820 ILCS 105/3(d).

103.    The IMWL requires employers, like Jennmar, to pay non-exempt employees, including Maxfield and the other IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. 820 ILCS 105/4a.

104.    Maxfield and the other IMWL Class Members are entitled to overtime wages under the IMWL.

105.    Jennmar violated, and is violating, the IMWL by failing to pay Maxfield and the other IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid meal breaks. *See* 820 ILCS 105/4a.

106.    Jennmar's unlawful conduct harmed Maxfield and the other IMWL Class Members by depriving them of the overtime wages they are owed.

107.    Accordingly, Maxfield and the other IMWL Class Members are entitled to recover the difference between the overtime wages actually paid and the proper overtime wages actually earned, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 105/12(a).

## COUNT II

### FAILURE TO PAY ALL EARNED WAGES UNDER THE IWPCA PURSUANT TO 820 ILCS 115/1, *ET SEQ.* (IWPCA CLASS)

108.    Maxfield incorporates all other paragraphs by reference.

109.    Maxfield brings his IWPCA claim on behalf of himself and the other IWPCA Class Members pursuant to Rule 1700, *et seq.*

110.    Jennmar's conduct violates the IWPCA (820 ILCS 115/1, *et seq.*).

111.    At all relevant times, Jennmar was subject to the IWPCA because Jennmar was (and is) an "employer" within the meaning of the IWPCA.

112.    At all relevant times, Jennmar employed Maxfield and the other IWPCA Class Members as its covered "employees" within the meaning of the IWPCA.

113.    The IWPCA requires employers, like Jennmar, to pay employees, including Maxfield and the other IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

114.    During the course of their employment, Jennmar agreed to pay Maxfield and each IWPCA Class Member an hourly rate for all the hours of work they performed.

115.    Maxfield and each IWPCA Class Member accepted Jennmar's offer.

116.    But during the course of their employment, Jennmar failed to pay Maxfield and the other IWPCA Class Members for all the time they worked at the hourly rates Jennmar agreed to pay them because Jennmar failed to include the time that they worked "off the clock" beyond their scheduled shifts in their total number of hours worked in a given workweek.

117.    Thus, Jennmar violated, and is violating, the IWPCA by failing to pay Maxfield and the other IWPCA Class Members all their earned wages (at the hourly rates Jennmar agreed to pay them) for all the hours of work they performed for Jennmar's benefit.

118.    Jennmar's unlawful conduct harmed Maxfield and the other IWPCA Class Members by depriving them of the earned wages they are owed.

119.    Accordingly, Maxfield and the other IWPCA Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 115/14(a).

## JURY DEMAND

120.    Maxfield demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Maxfield, individually and on behalf of the other Hourly Illinois Workers,

seeks the following relief:

(a)    An Order certifying this lawsuit as a class action on behalf of the putative

class of Hourly Illinois Workers, and prompt issuance of notice to the

Hourly Illinois Workers apprising them of the pendency of this action

pursuant to Rule 1712;

(b)    An Order appointing Maxfield and his counsel to represent the interests of

the Hourly Illinois Workers;

(c)    An Order finding Jennmar liable to Maxfield and the other IMWL Class

Members for unpaid overtime wages owed under the IMWL, plus treble

damages, as well as monthly statutory damages at the rate of 5% per month

in the amount of the underpayment;

(d)    An Order finding Jennmar liable to Maxfield and the other IWPCA Class

Members for unpaid earned wages owed under the IWPCA, as well as

monthly statutory damages at the rate of 5% per month in the amount of the

underpayment;

(e)    An Order awarding attorneys' fees, costs, and expenses;

(f)    A Judgment against Jennmar awarding Maxfield and the other Hourly

Illinois Workers all their unpaid wages, treble damages, monthly statutory

19

damages, attorneys' fees, costs, expenses, and any other penalties available under the IMWL and IWPCA;

(g) An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

(h) All such other and further relief to which Maxfield and the other Hourly Illinois Workers may show themselves to be justly entitled.

Respectfully submitted,

GOODRICH & GEIST, PC

By: /s/ Joshua P. Geist
       Joshua P. Geist, Esquire
       PA ID No. 85745
       William F. Goodrich, Esquire
       PA ID No. 30235
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

Michael A. Josephson, Esquire
PA ID No. 308410
Andrew W. Dunlap, Esquire*
TX Bar No. 24078444
William M. Hogg, Equire*
TX Bar No. 24087733; Cal. Bar No. 338196
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch, Esquire*
TX Bar No. 24001807
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming

ATTORNEYS FOR MAXFIELD AND
THE HOURLY ILLINOIS WORKERS

## VERIFICATION

I, <u>Alex Maxfield</u>, hereby certify that the facts alleged in the above Complaint are true and correct to the best of my knowledge. This statement is made subject to the penalties of 18 Pa.C.S.A. 4904, relating to unsworn falsifications to authorities.

Date: <u>Jan 19, 2024</u>

<u>Alex Maxfield (Jan 19, 2024 10:41 CST)</u>
**Alex Maxfield**

22